Fleenor *et al. v.* Driskill *et al.*

No. 10,749.

## FLEENOR ET AL. *v.* DRISKILL ET AL.

PARTITION.—*Title.*—Proceedings in partition create no new title, but, ordinarily, simply divide the land as held under existing titles into separate shares.

SAME.—*Interlocutory Order.*—It is by the interlocutory order that the rights and interests of the parties in suits for partition are adjusted.

SAME.— *Order of Sale.*—*Appeal.*—An order for the sale of land in a partition proceeding is a final order, from which an appeal may be taken.

JUDGMENT.—*Reference to Record.*—If the entry of a judgment is so obscure as not to express the final determination of the court with sufficient accuracy, reference should be had to the pleadings and to the entire record when construing the judgment.

From the Washington Circuit Court.

*D. M. Alspaugh* and *J. C. Lawler,* for appellants.

*S. B. Voyles* and *H. Morris,* for appellees.

NIBLACK, J.—On the 2d day of January, 1850, John Fleenor executed and published his last will and testament, the disposing part of which was as follows:

"*Secondly.* I will and bequeath to Henry Fleenor, Abraham Fleenor, Sarah Jane and Martha Fleenor, the children of Betsey Hensley, from whom I was divorced, the sum of one dollar each.

"*Thirdly.* I will and bequeath to my wife, Rebecca, one quarter section of land, to be selected by her at her own free choice and option from any of the lands that I may die seized of, to be chosen by her within one year after my death, for her support and maintenance, and that of the children she has or may have by me, during her life, and, at her death, the same I will and bequeath to the said children, share and share alike, and their heirs and assigns forever. This bequest is made in lieu of dower to my real estate. * * *
But in case she shall not choose to accept of this bequest in lieu of dower in my real estate, then I give and bequeath said quarter section of land to the said children, without any

limitation or intervening estate, absolutely forever, share and share alike; and furthermore, if my said wife, Rebecca, shall neglect to choose and designate such quarter section of land as above provided for, I authorize and request my executors, hereinafter named, to do it in behalf of said children, and their choice shall bind.

"*Fourthly.* I also give and bequeath to my said wife, Rebecca, all the household furniture I may be possessed of at my death, absolutely, together with the provisions on hand for the use of my family at my death.

"*Fifthly.* As to the rest, residue and remainder of my estate, real or personal, I will and direct that it be divided equally between my other children not hereinbefore named or alluded to, and to the children and heirs of those who, being dead, were in life my children, the same share that the parent, if alive at my death, would be entitled to, and to their heirs and assigns forever.

"*Sixthly.* I furthermore will and bequeath, order and direct, that if, in the opinion of my executors, the (quarter) section of land hereby to be designated and set off to the children of my wife, Rebecca, by me, will not afford them equal shares with my other devisees, they shall cause to be set off to them as much of my land as will make them equal shares in my estate."

On the 19th day of September, 1853, the said John Fleenor died, leaving his will, executed and published as above, in full force, which, on the 22d day of the same month, was duly proven and admitted to probate. Within a few days thereafter Rebecca Fleenor, the widow, elected to, and gave notice that she would, take her share of the testator's real estate under the statute, and not under the will. The decedent was three times married, and, in that way, left three sets of children, constituting, in the aggregate, a numerous family, surviving him. The children which he had by the above named Rebecca, his last wife, and who survived him, were Rhoda Homocker, Henry Fleenor, Martha E. Driskill, William

Fleenor and Francis M. Fleenor. The decedent died seized also of several tracts of land, covering together an area of near, if not quite, one thousand acres.

On the 23d day of November, 1853, Nicholas Fleenor, one of the decedent's children by his first wife, filed his petition in the common pleas court of Washington county, praying that partition might be made of the lands · of which his said father had died seized, and making the widow and the remaining children and heirs at law of the decedent defendants to answer the petition.

Rebecca Fleenor appeared to the action and answered, reiterating her refusal to take under the will, averring title in herself, as such widow, to one undivided third part of the land described in the petition, and uniting with the petitioner in his demand for partition. Some of the children, being minors, answered by guardian *ad litem,* and the remaining defendants made default. No reply was filed to the answer of Rebecca Fleenor.

At a hearing of the cause, on the 3d day of April, 1854, the common pleas court made a finding that John Fleenor, the testator, had died seized of the land referred to in the petition; that the said Rebecca Fleenor was his widow, and had refused to take under his will; that the said Rebecca had neglected to select the quarter section of land devised to her children, and that the executors appointed by the will had refused to qualify as such executors; that, in continuing, the court said: "And it is found by the court that said Rebecca Fleenor, the widow of said deceased, is justly entitled to the one equal fourth part of said lands heretofore described." The court then proceeded to make a finding as to, and to define the interests of, all the other parties, concluding that partition ought to be made between the parties according to their said respective interests, and decreeing partition accordingly.

At the same term, the commissioners appointed to make partition made their report to the court, amongst other things, assigning and setting over to the said Rebecca Fleenor,

*one-fourth* of the lands mentioned in the petition and decree of partition, to wit, the southwest quarter of section twenty-nine (29), in township three (3) north, of range four (4) east, with a yard running from the house forty feet east and sixty feet north and south, and also the right to use the water from the spring east of the house on said quarter section during her life; also, fifty-two acres off of the north end of the northwest quarter of section thirty-two (32) in the same town-ship and range. The report of the commissioners, which also set apart a tract of land to the five children of the said Rebecca herein above named, was in all things approved and confirmed, the court adding as follows: "And it is or-dered and decreed by the court that said widow have and en-joy the premises set apart to her for and during her natural life." Rebecca Fleenor, the widow referred to in this decree, went into the immediate possession of the lands assigned and set over to her as above set forth, and so continued until the time of her death as hereinafter stated, remaining sole and un-married after the death of her then late husband, John Fleenor.

Previous to the month of November, 1863, Francis M. Fleenor died, unmarried and without issue, leaving his mother Rebecca and his brothers and sisters of the half-blood, as well as of the whole-blood, his only heirs at law. By partition proceedings, commenced on the 16th day of that month, thirty acres of the land of which the said Francis died seized were also assigned and set over to his mother, Rebecca, as one of his heirs at law. Afterwards, the said Rebecca conveyed the one hundred and sixty acre tract of land set apart to her in the first partition proceedings, and the thirty acre tract which came to her as lastly above stated, to her son William Flee-nor, who has since come into the possession of those tracts of land. Before the death of Rebecca Fleenor, which occur-red on the 12th day of August, 1878, Emeline C. Barnett became the remote grantee from her of the fifty-two acre tract of land set off to her, the said Rebecca, as the widow of John

Fleenor, and went into possession of said tract claiming title in fee simple.

This action was commenced since the death of Rebecca Fleenor by a part of the lineal descendants of John Fleenor against others of his like descendants, including William Fleenor and Emeline C. Barnett, for partition of the lands set apart to the said Rebecca, first as the widow of her late husband, and afterwards as the mother and heir at law of Francis M. Fleenor, upon the theory that she held a life-estate only in those lands.

Upon a special finding of the facts, substantially as herein above recited, the circuit court came to the conclusion : *First.* That, under the final decree of the court of common pleas of Washington county, entered in the partition suit instituted by Nicholas Fleenor on the 23d day of November, 1853, as above stated, Rebecca Fleenor took and held a life-estate only in the lands assigned and set over to her by the proceedings in that cause. *Secondly.* That under the residuary clause of the last will and testament of John Fleenor, herein above set out, the title to the lands so assigned and set over to the said Rebecca, upon her death vested in the residuary devisees, that is to say, in the children of the first wife, naming those children, and the descendants of those who are dead, and declaring the share to which each is entitled. *Thirdly.* That Emeline C. Barnett has no interest in such lands. *Fourthly.* That William Fleenor is the owner in fee simple of the thirty acre tract of land conveyed to him by his mother, Rebecca Fleenor.

And it being made further to appear that the one hundred and sixty acre tract, and the fifty-two acre tract, described in the complaint, could not be divided without damage to the owners, it was ordered that those tracts be sold and the proceeds divided between the parties according to their respective interests as declared by the court.

It is conceded in argument that the circuit court reached the conclusion that Rebecca Fleenor took and held only a

life-estate in the one hundred and sixty acre and in the fifty-two acre tracts of land, upon the ground that the final order in the partition proceedings by which those tracts were assigned and set over to her limited her interest in those tracts to, and defined it to be a life-estate only, and that such final order constituted an adjudication of her title to those lands binding upon her, as well as those claiming under her in this proceeding.

Title to real estate may be put in issue, tried and determined in partition proceedings, and when so put in issue, tried and determined, the judgment rendered is binding upon all the parties to the issue. Proceedings in partition, however, create no new title. Ordinarily, such proceedings simply divide the land as held under existing titles into separate shares, or, as may be otherwise stated, merely divert the common and flowing stream of title into separate channels. *Miller* v. *Noble*, 86 Ind. 527; 1 Washb. Real Prop. 59, section 60.

We see nothing in this case which takes it out of the general rule applicable to similar proceedings. In the first partition proceedings, no reply was filed to the answer of the widow setting up title in herself to one-third of the lands of which her husband had died seized. The facts upon which her claim of title rested were substantially admitted by the pleadings. The finding of the common pleas court was made and the interlocutory order of partition was entered upon the evident assumption that she was the absolute owner of one-fourth part of the lands of which partition was then demanded, and it is by the interlocutory order that the rights and interests of the parties in suits for partition are regularly adjusted and defined. 2 R. S. 1876, p. 345, section 9; R. S. 1881, section 1189; 2 Barb. Chancery Pr. 297; *Lease* v. *Carr*, 5 Blackf. 353.

The report of the commissioners, assigning and setting over to Rebecca Fleenor an estimated fourth part of the lands of her husband, was in substantial conformity with the interlocutory order. The restriction as to time placed upon her right to

use water from the spring, referred to in the report, had plainly no reference to or connection with her estate in the lands set apart to her by that instrument. By the confirmation of the report she became entitled to hold the lands assigned and set over to her, in severalty and in fee simple, and the subsequent words, used in the final order, purporting to restrict her holding and enjoyment of the premises in question to her natural life, in analogy to the final entry in proceedings for the assignment of dower, then but recently abolished, were without any practical meaning as applicable to her estate in the land set off to her, and hence mere surplusage.

If the entry of a judgment be so obscure as not to express the final determination of the court with sufficient accuracy, reference may, and indeed ought to, be had to the pleadings, and the entire record, when construing the judgment. Freeman Judg., section 45 ; *Foot* v. *Glover*, 4 Blackf. 313 ; *Finnagan* v. *Manchester*, 12 Iowa, 521 ; *Fowler* v. *Doyle*, 16 Iowa, 534 ; *Bell* v. *Massey*, 14 La. An. 831 ; *Hopper* v. *Lucas*, 86 Ind. 44.

So much of the interlocutory order as restricted Rebecca Fleenor's interest in the lands of her husband to one-fourth only was probably either the result of an inadvertence or of a clerical mistake, but no question is made upon the proceedings on that account, and, in consequence, nothing is before us on that subject.

Upon a careful review of the whole case, we are led to the conclusion that Mrs. Fleenor was not restricted to a life-estate in the lands set apart to her as the widow of John Fleenor, as held by the circuit court, but became and was the owner of those lands in fee simple after they were so set apart to her.

But it is objected that the judgment appealed from in this case was not a final judgment, within the meaning of section 632, R. S. 1881, authorizing appeals to this court, and that for that reason this appeal can not be sustained.

It is admitted that an appeal will lie from an ordinary proceeding in partition after the commissioners have reported and their report has been confirmed. *Kern* v. *Maginniss*, 41 Ind. 398. A decree in partition for the sale of the lands, after it has been ascertained that they can not be properly divided, is as much a final disposition of the cause as the confirmation of the report of commissioners making partition of the property.

It has been well said, " That, if after a decree has been entered, no further questions can come before the court, except such as are necessary to be determined in carrying the decree into effect, the decree is final." Freeman Judg., section 36. Tested by that definition, the order for the sale of the lands in this case, was a final order from which an appeal to this court was properly prosecuted. *Ferguson* v. *State, ex rel.*, 90 Ind. 38.

The judgment is reversed, with costs, and the cause remanded with instructions to the circuit court to state conclusions of law, and to enter final judgment, in accordance with the views expressed in this opinion.

Filed Sept. 19, 1884.