Luntz *v.* Greve *et al.*

No. 11,964.

## LUNTZ *v.* GREVE ET AL.

PARTITION.—*Title.*—Ordinarily, in a suit for partition, the title to the land is not in issue; but title may be put in issue in such a suit by appropriate pleadings, and when thus put in issue the decree is conclusive on that question.

SAME.—*Pleading.*—Under the statute, where the complaint in a suit for partition by proper averments tenders an issue as to the title to the land, an answer of general denial admits all defences; but when the complaint does not tender such issue, the general denial does not have such effect, and, in such case, in order that the question of title may be involved, it must be presented by an affirmative pleading on the part of the defendant.

PRACTICE.—*Demurrer.*—*Harmless Error.*—There is no available error in sustaining a demurrer to a paragraph of pleading, if the party pleading such paragraph has in any other form the full benefit of the matters therein pleaded.

HUSBAND AND WIFE.—*Wife's Deed.*—*Tenant by the Curtesy.*—*Statute of Limitations.*—In 1847 land was conveyed to a married woman by a deed giving her an estate of inheritance, without any express and clear restriction of the rights of her husband, and she and her husband took possession. In 1850 she alone executed a voluntary deed, recorded in 1866, purporting to convey the land to her said husband, and he remained in possession, claiming ownership, till she died intestate, in 1869, leaving surviving her said husband and a number of children, his issue by her. Said husband continued in possession of the land until, in 1873, he sold and by warranty deed conveyed it for value to a stranger, who

thereupon took possession and paid the purchase-money to said husband and father, who died in 1875, leaving said children surviving.

*Held,* that said deed of the wife to the husband conveyed no interest, but was void. ·

*Held,* also, that the husband was a tenant by the curtesy, and the right of action of said children for partition and the recovery of their interests in the land as the heirs of their mother did not accrue, and the statute did not begin to run against them, until the death of their father.

From the Allen Superior Court.

*J. Morris, C. H. Aldrich* and *J. M. Barrett,* for appellant.

*H. Colerick* and *W. S. Oppenheim,* for appellees.

ELLIOTT, J.—It is alleged in the complaint of the appellees, who were the plaintiffs below, that Ann Helen Greve died intestate, the owner of real estate, of which a specific description is given, leaving her surviving, her husband, Francis Greve, and her children, the appellees; that, on the 21st day of April, 1873, Francis Greve conveyed all of his interest in the land to the defendant; that by the death of Ann Helen Greve the appellees were seized as tenants in common of one-ninth of said land in fee.

This complaint, it will be observed, is an ordinary complaint for partition, and does not, by any averment, put the title in issue. It simply pleads enough upon the subject of title to give the appellees a *prima facie* right to partition, and this was all it was incumbent upon the parties to do in order to make a case entitling them to the relief prayed. The relief sought is, not the establishment or quieting of title, but merely partition of the land. Ordinarily, the title to the land is not in issue in a suit for partition. Neither the object of the suit, nor the effect of the decree, is to establish or quiet title, but simply to make division of the land. *Fleenor* v. *Driskill,* 97 Ind. 27; *Kenney* v. *Phillipy,* 91 Ind. 511; *Miller* v. *Noble,* 86 Ind. 527; *Utterback* v. *Terhune,* 75 Ind. 363; *Avery* v. *Akins,* 74 Ind. 283; *Teter* v. *Clayton,* 71 Ind. 237. Title may be put in issue by appropriate pleadings, and, when thus put in issue, the decree is as conclusive as in any other

action.   *Fleenor* v. *Driskill, supra;   Kenney* v. *Phillipy, supra;   Cooter* v. *Baston,* 89 Ind. 185; *Ferris* v. *Reed,* 87 Ind. 123; *Miller* v. *Noble, supra; McMahan* v. *Newcomer,* 82 Ind. 565; *Cravens* v. *Kitts,* 64 Ind. 581; *Milligan* v. *Poole,* 35 Ind. 64; *Godfrey* v. *Godfrey,* 17 Ind. 6.   In the present case, the complaint seeks partition only, makes only such averments as are necessary to procure partition, and tenders no issue requiring the quieting or establishment of title.

The code provides that the rules prescribed in actions to recover possession or to quiet title are extended, so far as they are applicable, to partition cases "when the title to real estate is *bona fide* in question, upon the pleadings and evidence between the parties" (R. S. 1881, section 1071), and the question which first arises is as to what cases this statutory rule applies.   Where the complaint by proper averments puts the title in issue, then the general denial admits all defences, but when the complaint does not tender that issue, the general denial can not have that effect.   If the complaint does not, by proper averments, present that issue, it must be done by some affirmative pleading on the part of the defendant, or it can not be truly said to be in issue "on the pleadings." Without pleadings putting the title in issue, it is inconceivable that it can be in issue "on the pleadings," and it is only where it is thus in issue that the general denial admits all special defences.   If the plaintiff desires to put it in issue, he must do so by appropriate averments in his complaint; otherwise he can not insist that the general denial embraces special defences.   If the plaintiff does not elect to put the title in issue and the defendant does, it is then not only proper but necessary to plead it specially by way of answer or counter-claim.   If the defendant desires an adjudication upon the question of title, he must plead facts tendering that issue, for, if he contents himself with a mere denial, he does no more than controvert the plaintiff's right to partition, and, in that event, the only matter conclusively adjudicated is the right to a division of the land.   We are of the opinion that

the appellee is wrong in asserting that the second paragraph of the answer, which pleads title by estoppel, is embraced by the general denial.

The matters contained in the second paragraph of the answer are, however, pleaded by way of counter-claim, and this gave the appellant the full benefit of them, and there was, therefore, no available error in sustaining the demurrer to the answer. We suppose it to be immaterial what name is given a pleading, provided it be of such a character as to secure the party the full benefit of the matters pleaded in another form.

The third paragraph of the answer and the third paragraph of the counter-claim are substantially the same, and, for the reason just given in disposing of the demurrer to the second paragraph of the answer, we hold that no available error was committed in sustaining the demurrer to the third paragraph of that pleading.

The facts stated in the special finding are substantially these: On the 26th day of June, 1847, John B. Voors, then the owner of the land, conveyed it to his daughter, Ann H. Greve. The *habendum* clause of the deed reads thus: " To have and to hold the above described premises hereby sold and conveyed unto the said party of the second part, her heirs and assigns forever, together with all the appurtenances thereunto belonging, and rents, profits and reversions of the same, to her own proper use, benefit and behoof." Soon after the execution of this deed, Ann H. Greve and her husband, Francis Greve, took possession of the land. About a year after Voors conveyed the land to her, she and her husband executed a mortgage conveying the land to Bernard Joseph Voors and Mary Voors to secure a debt of $350 ; the note evidencing the debt was executed in part payment for the land, " and to equalize the division of property made by John B. Voors among his children." This note was afterwards paid by Francis Greve, and the mortgage was satisfied in 1861. In April, 1850, Ann H. Greve executed a deed in the usual form, pur-

porting to convey the land to her husband, Francis Greve. After the execution of this deed Ann H. Greve and her husband, being then in possession of the land, made lasting and valuable improvements, of the value of twelve hundred dollars. From the time of the execution of the deed to him Francis Greve remained in possession, claiming to be the owner of the land, asserting adverse possession thereof, and so remained in possession until the death of his wife, who died intestate in 1869. Ann H. Greve left surviving her the following named children: Joseph Greve, then twenty-one years of age, John H. Greve, then nineteen years of age, Matilda Greve, now Matilda Armstrong, then seventeen years of age, Clara Greve, now Clara Hempkin, then fourteen years of age, Catherine Greve, then ten years of age, Mary Greve, then aged seven years, and Emma Greve, then aged four years. Catherine Greve survived her father and died without issue in 1875. The husband, Francis Greve, remained in possession of the land after the death of his wife until he sold it. On the 15th day of April, 1868, he and his wife mortgaged the land to Bernard Sehler, to secure a debt of one thousand dollars, which debt and mortgage were assigned to John Laurent in November, 1871. In March, 1870, Francis Greve executed a mortgage, to secure one thousand dollars, to John Laurent, and in October, 1871, executed a mortgage to him for three thousand dollars, and in this sum the two prior mortgages of one thousand dollars each were included. On the 21st day of April, 1873, Francis Greve sold and conveyed the land by warranty deed to John Luntz for $6,300; the purchaser paid part of the purchase-money in cash, assumed the mortgage executed to Laurent, assumed and paid taxes on the land amounting to $177, subsequently paid part of the mortgage, and executed to Greve his notes and mortgage for the residue of the purchase-money. At the time Francis Greve conveyed the land to Luntz, the appellees Joseph and John Greve were present and heard the deed read, but neither

of them knew that he had any interest in the land.   Luntz
took possession of the land upon the execution of the con-
veyance to him, believing that he was the owner, and igno-
rant that the appellees had, or claimed to have, any interest
therein; he continued in possession, and has paid taxes since
his purchase amounting to $477.29, and has made improve-
ments to the value of $828 ; he has received the rents and
profits of the land, amounting to $250 per annum; and the
value of the taxes paid by him, together with the value of the
improvements, is sufficient to liquidate the amount of the
rents received.   One of the appellees, Joseph Greve, about a
year prior to the death of his father, Francis Greve, was in-
formed by a neighbor, who had no interest in, or particular
knowledge of, the matter, that he, Joseph Greve, had an in-
terest in the land.   This appellee lived about four miles from
the land at the time his father conveyed it, but never men-
tioned the fact to the appellant that he had an interest in
the land, or had heard that he had an interest therein.
The purchase-money was paid in full to Francis Greve prior
to his death, which occurred in September, 1875.   The deed
executed by Ann H. to Francis Greve was duly recorded on
the 12th day of March, 1866.   The conclusions of law stated
by the court are as follows :

" 1st.   The deed from John B. Voors to Ann H. Greve did
not convey to her a separate estate so as to exclude her hus-
band from his marital rights in said land, and, therefore, that
by the deed he became entitled to the land during the joint
lives of himself and wife.

" 2d.   The deed from Ann H. Greve to her husband, Fran-
cis Greve, was and is void, and vested no title in him what-
ever beyond the title acquired by him by virtue of the deed
from Voors to Ann H. Greve.

" 3d.   Upon the death of Ann H. Greve the land descended,
two-thirds to the plaintiffs collectively (subject to whatever
right Francis Greve may have had as tenant by the curtesy),
and one-third to Francis Greve.

"4th. The deed from Francis Greve to the defendant vested in him the title to one-third of the land in fee.

" 5th. Inasmuch as that the said Francis Greve was entitled to the land during the lifetime of his wife, Ann Helen, she had no right of action against him in her lifetime to recover it, and hence the statute of limitations did not run against her, and her heirs are not bound by the lapse of sufficient time.

" 6th. There is nothing in the facts found that can estop any of the plaintiffs to set up their respective rights to the land."

We have no doubt that the deed of Voors to his daughter conveyed to her the title to the land, but whether it operated to vest in her such an estate as excluded the husband from his rights as tenant by the curtesy, is not so clear. But, granting for the present that the appellant is right in his assumption that the deed did vest a separate estate in the wife to the exclusion of the husband, still, the deed of Ann H. Greve to her husband must be regarded as without force, and, if this be true, then the appellant's title fails. It has been held in this State from first to last, that a married woman can only convey her lands by a deed in which her husband unites. The question has been so often decided that it can not now be regarded as an open one. Our theory has always been that a married woman was disabled from conveying lands at common law, and that she could convey only by uniting with her husband in a deed.

The right of action did not accrue until the death of the husband, for during his life he was a tenant of the land by the curtesy. We think the true rule upon this subject is correctly declared by Chancellor KENT, who says, of a former conflict in the decisions upon the subject: " But it is now settled otherwise, and the husband is tenant by the curtesy if the wife has an equitable estate of inheritance, notwithstanding the rents and profits are to be paid to her separate use during the coverture. The receipt of the rents and profits is

a sufficient seisin in the wife.   And if the lands be devised to the wife, or conveyed to trustees for her separate and exclusive use, and with a clear and distinct expression that the husband was not to have any life-estate or other interest, but the same was to be for the wife and her heirs; in that case, the court of chancery will consider the husband a trustee for the wife and her heirs, and bar him of his curtesy."   4 Kent Com. (12th ed.) 31.   The deed in the case before us does vest in the wife an estate of inheritance, and there are no clear and distinct words excluding the rights of the husband.   The deed, in truth, differs very little from the ordinary form in use at the time it was executed, and the superadded words do not add strength to the words of limitation.   At all events, there is nothing abridging the rights of the husband, for there are no clear words excluding him from his marital rights.   There are very many cases declaring the same doctrine as that laid down by Kent; among them are:   *Nightingale* v. *Hidden,* 7 R. I. 115;   *Tyler* v. *Lake,* 2 Russ. & Myl. 183;   *Massey* v. *Parker,* 2 Myl. & K. 174;   *Wardle* v. *Cloxton,* 9 Sim. 524;   *Jacobs* v. *Amyatt,* 1 Mad. 206 n.;   *Wills* v. *Sayers,* 4 Mad. 409;   *Roberts* v. *Spicer,* 5 Mad. 491;   *Kensington* v. *Dollond,* 2 Myl. & K. 184;   *Fears* v. *Brooks,* 12 Ga. 195;   *Paul* v. *Leavitt,* 53 Mo. 595;   *Ashcraft* v. *Little,* 4 Iredell Eq. 236;   *Carter* v. *Dale,* 3 Lea (Tenn.) 710 (31 Am. R. 660);   *Tremmel* v. *Kleiboldt,* 6 Mo. Ap. 549;   *Stewart* v. *Stewart,* 7 Johns. Ch. 229;   *Dubs* v. *Dubs,* 31 Pa. St. 149;   *Cushing* v. *Blake,* 30 N. J. Eq. 689.

The statute of 1843 provides that, " When any man and his wife shall be seized, in her right, of any estate of inheritance in lands, and shall have issue, born alive, which might inherit the same, the husband shall, on the death of his wife, hold the lands for his life, as tenant thereof by the curtesy." The deed of John B. Voors certainly vested in Mrs. Ann H. Greve an estate of inheritance, and thus brought the case fully within the statute.   It can not be doubted that as the survivor of his wife, whatever may have been his rights

during her life, Francis Greve had a right to possession of the lands as tenant by the curtesy. As Greve had the right of possession the right of entry did not accrue until his death, and from that time, and not before, the statute began to run. *Butterfield* v. *Beall*, 3 Ind. 203; *Nicholson* v. *Caress*, 59 Ind. 39.

Counsel for appellant place much stress upon a statute enacted in 1847, which reads thus:

" That no real estate whereof any married woman was or may be seized or otherwise entitled to at the time of her marriage, or which she has or may fairly acquire during her coverture, or any interest therein, shall be liable for the debts of her husband, but the same and all interest therein, and all rents and profits arising therefrom, shall be deemed and taken to be her separate property, free and clear from any and all claim or claims of the creditors or legal representatives of her husband as fully as if she had never been married: *Provided,* That this law shall not be so construed as to apply to debts contracted by such married woman before such marriage, but in all such cases her said property shall be first liable therefor." Acts 1847, p. 45.

The contention is that this statute vests the wife's separate estate in her to the exclusion of the husband. We think this position untenable. It was not intended to abolish tenancy by the curtesy, but simply to protect the income of the property from seizure by the creditors of the husband. This was the construction given the statute in *Junction R. R. Co.* v. *Harris*, 9 Ind. 184, and we see no reason to question the soundness of that decision. The statute of 1847 is to be considered as a part of one great system of jurisprudence, and not as a distinct and separate rule of law, and, when thus considered, it goes no farther than to prevent creditors of the husband from seizing the income arising from the property of the wife. If the construction contended for by appellant were given it, the result would be an overthrow of the great body of the law then existing governing the rights of the husband

in the lands of the wife, and such a result is one to be avoided unless the plain words of the statute rigorously lead to it. We may here aptly employ the language used by another court in a similar case: "Curtesy is a legal incident of the wife's estate of inheritance, and is a right favored in the law. A husband will not be excluded from rights in the property of the wife springing from the marital relation, except by words that leave no doubt of the intention to do so. *Massey* v. *Parker*, 2 Myl. & K. 174, 181. The married woman's act most effectually makes the estate of the wife her separate estate, and yet it has not abolished the husband's curtesy after her death. *Johnson* v. *Cummins*, 1 C. E. Green, 97; *Porch* v. *Fries*, 3 C. E. Green, 204." DEPUE, J., in *Cushing* v. *Blake, supra.*

Judgment affirmed.

Filed March 17, 1885.

### ON PETITION FOR A REHEARING.

ELLIOTT, J.—A very ingenious argument has been filed by appellant's counsel on the petition for a rehearing, but able as it is, it is based upon a false foundation. It is tacitly assumed that for the conveyance made by Ann Helen Greve to her husband, in 1850, he paid such a consideration as entitles the deed to be protected in equity. This assumption is not warranted by the finding, for it reads thus: "That in April, 1850, the said Ann Helen Greve executed a deed in the usual form, purporting to convey to her husband directly the land in controversy, for the consideration, as expressed in the deed, of love and affection and the sum of five dollars." There is here no valuable consideration, for it is too plain for controversy that the money consideration named is a mere formal and nominal one.

Many cases are cited by counsel to the effect that a deed from the husband to the wife, although void at law, may be protected in equity; but the difference between these cases and the present is very great; the husband is not under any disability; the wife is. The question is not as to the power of

alienation of a person free from disability, but the question is as to the power of alienation of a person disabled by coverture. There is, as stated in *Hunt* v. *Johnson*, 44 N. Y. 27 (4 Am. R. 631), another reason why a distinction is made between the two classes of cases, and that is this, the husband is under a legal duty to support his wife, but no obligation rests upon her to support her husband. Counsel have not cited any case where equity interposed to protect a husband, who paid no consideration for a conveyance to him of the lands of the wife, against the claims of her children, and we have seen none in the course of our investigation. Conceding that there are cases in which equity would protect the deed of the wife to the husband under our statutes, either of 1843 or 1852, still, the husband who claims under a mere voluntary conveyance is not entitled to invoke the exercise of the power of a court of conscience in his behalf. But we think that this concession is not warranted, for, as our cases uniformly declare, it has always been the law of this State that a married woman could only convey her property in a deed in which her husband joined. This was the common law, as shown by a recent writer, who says: " But a conveyance of lands by the wife directly to her husband, especially if it be voluntary, has been considered ineffectual and void. And even under the late married women's acts, her right to make such a conveyance is still generally, though not universally, denied." Schouler Husband and Wife, section 397. In *Scott* v. *Purcell*, 7 Blackf. 66, it was held that a married woman could not alienate her land " without joining in a deed with her husband." The question seems always to have been regarded as one of power, and as the wife has no power to execute a separate deed, there is no effective instrument upon which any court can act. No court can give force to what the law provides shall be without force. *Baxter* v. *Bodkin*, 25 Ind. 172. The statute of 1843 did not confer power on the wife to convey her real estate by her separate deed; on the contrary, it clearly requires a joint deed, for thus it reads : " The joint deed of the hus-

band and wife, upon complying with the provisions of the fortieth section of this chapter, shall be sufficient to convey and pass the real estate of the wife, but not to bind her to any covenant or estoppel therein." R. S. 1843, p. 417, section 17.

Petition overruled.

Filed June 26, 1885.