The Patrons Mutual Aid Society of Vermillion County v. Hall.

---

THE PATRONS MUTUAL AID SOCIETY OF VERMILLION COUNTY *v*. HALL.

[No. 2,166.   Filed January 25, 1898.]

PRACTICE.—*Harmless Error.*—Sustaining a demurrer to one of several paragraphs of answer is harmless error, where the same evidence is admissible under other paragraphs.  *p. 120.*

INSURANCE.—*Cancelation of Policy.*—*Withdrawal.*—*Mutual Insurance.*—Where the by-laws of a mutual fire insurance company which pays all losses by assessments upon the members provide that in order to withdraw from such society the member must pay up his past dues, obtain the written consent of the directors thereof and return the policy for cancelation, a policy holder cannot terminate his membership except in the manner provided in the by-laws, and where a member paid up all assessments and requested the secretary to erase his name from the books of the society and the secretary complied with such request and promised the member that no further assessments should be made against him, such action will not constitute a cancelation of the policy of insurance and the company is liable for a loss occurring under the policy held by such member.  *pp. 120-124.*

The Patrons Mutual Aid Society of Vermillion County *v.* Hall.

INSURANCE.—*Cancelation of Policy.*—*Mutual Fire Insurance Company.*—The board of directors of a mutual fire insurance company has no authority to order the secretary of the company to cancel a policy in any manner other than that provided in the by-laws. *p. 125.*

SAME.—*Answer.*—*Cancelation.*—It was not error to strike out an allegation in an answer to a complaint on a fire insurance policy that plaintiff regarded his policy in suit canceled and that he had publicly announced that he had withdrawn from the company. *p. 125.*

SAME.—*Special Finding.*—*Sufficiency.*—Where the special findings in an action on a fire insurance policy state that the policy was issued to plaintiff, that it had not expired, that all dues and assessments were paid, that plaintiff had not assigned the policy nor surrendered it for cancelation, such findings show the policy to be in force although such fact is not stated in so many words. *p. 125.*

SAME.—*Mutual Fire Insurance Company.*—*By-Laws.*—An old by-law of a mutual insurance company providing that no member could withdraw without first paying all past dues and obtaining the written consent of the board of directors, and a new by-law providing that such withdrawing member shall return his policy to the secretary for cancelation, are not inconsistent with each other. *p. 126.*

SAME.—*Mutual Fire Insurance Company.*—*By-Laws.*—*Amendment.*—*Special Finding.*—An insurance company cannot complain of a finding by the court that an old by-law of the company was in force where the rights of the parties were set out under both the old and the new or amended by-law. *p. 127.*

SAME.—*Policy.*—*Household Furniture.*—Carpets and bed clothing are covered by the term "household furniture" in a policy of insurance. *p. 127.*

WITNESS.—*Impeachment.*—A witness cannot be impeached on an immaterial matter. *p. 127.*

SAME.—*Examination.*—It is not error to sustain an objection to a question asked a witness, if the witness is afterward permitted, without objection, to answer the same question put in a different form. *p. 127.*

From the Vermillion Circuit Court.    *Affirmed.*

*C. W. Ward* and *G. G. Rheuby,* for appellants.

*Hugh H. Conley,* for appellee.

ROBINSON, C. J.—Appellee sued appellant on two policies of fire insurance to recover a fire loss. The first paragraph of complaint seeks to recover for the

loss of a dwelling house, and the second paragraph for the loss of household furniture, woodshed and some other buildings. The complaint was not questioned in the lower court and is not questioned here. Appellant answered the complaint in six paragraphs. The first paragraph of answer was a denial of both paragraphs of complaint. The second paragraph admitted the execution of the policies sued on, and the destruction of the property, but alleged that before the property was destroyed both policies were canceled, and that appellee had withdrawn from the company. The third and fourth paragraphs of answer, addressed respectively to the first and second paragraphs of complaint, are substantially alike. The sustaining of the demurrer to these two paragraphs of answer, if error at all, was harmless, for the reason that all the material facts alleged in them which went in defense of the action were provable under other paragraphs of answer. It is well settled that when a demurrer is sustained to one of several paragraphs of an answer the error is harmless if there are other paragraphs under which the same evidence is admissible. *Luntz* v. *Greve,* 102 Ind. 173; *Hall* v. *Hedrick,* 125 Ind. 326.

The fifth and sixth paragraphs of answer, addressed respectively to the first and second paragraphs of the complaint, are substantially the same, and admit the execution of the policies, and the fire; that appellee was a member of the company while the policy was in force; that all losses by fire are paid by assessments on its members; that the company's by-laws provide that its secretary shall keep a record of all property insured in a book kept for that purpose, and also a list of members and the length of time for which all property is entered for insurance; that on the — day of November, 1894, appellee paid said secretary all

dues and assessments then owing by him to appellant, and at said time told said secretary to erase his name from the books of said company and to make no more assessments against him, and to cancel his said policies of insurance, as he then and there severed all connection with said company and was no longer a member thereof; and that thereupon said appellee and said secretary agreed by parol that no assessments should be made against appellee; that his said policies of insurance were then at an end, and that he was no longer a member of said company and that said secretary promised appellee that he would erase his name from the books of said company as soon as he went to his office where said books were kept; that thereupon said secretary went immediately to his office and erased appellee's name and the record of all of his property entered and appraised for insurance from its said books, since which time up to the fire, both appellee and appellant treated said policies as canceled; that said secretary by the inherent power of his office, and by authority of the board of directors of appellant had authority to cancel said policies, and to do all the acts as herein set out.

Appellee replied in four paragraphs. The first paragraph is the general denial. The second, third, and fourth paragraphs of reply, which are directed to the fifth and sixth paragraphs of answer, are in substance the same; they admit that on the day named in the answers appellee paid appellant all assessments owing by him and that he then told said secretary that he wanted no more assessments made against him and that he wanted to withdraw from said company, and that said secretary told appellee he would mark his name off the books of the company, but he avers that he was never notified that his name was erased nor that his policies were canceled; that

he retained said policies in his possession and never took any further steps to have them canceled and that no demand for the return of said policies was ever made upon him, and that no cancelation was ever made, but that he held said policies in full force against appellant at the time of said fire; that said secretary well knew he had no power to cancel said policies as set out in the answers; that the by-laws of appellant provide the manner in which a member may withdraw from the company.    In the third paragraph of reply the by-law alleged to be in force at that time was as follows: "Article 12.   No member shall with- draw or assign any part of his or her interest in this company without first paying all past dues and ob- taining the written consent of the board of directors." In the fourth paragraph of reply the by-law alleged to be in force was as follows:    "Article 12.   No mem- ber of this company shall withdraw or assign any part of his or her interest in this company without first paying all past dues after which he may assign his or her policy to another, or return it to the secretary to be canceled."   The second paragraph of reply avers that article twelve as first above set out was adopted by appellant at its organization, and the same had never been altered or amended by any method known to the by-laws, and that the same was still in force at the time of said loss.

Many questions argued by counsel will be de- termined  by the construction to be given the article of the by-laws as above set out.

In the special finding the court found that both of these articles were in force at the time the policies were issued, and continued in force up to and after the fire.    Both of these articles provide in plain terms the conditions precedent to be performed by a member before he can withdraw.   In the original article a

member cannot withdraw until he has paid all past dues and has obtained the written consent of the board of directors.   In the article as amended a member cannot withdraw until he has paid all past dues and returned his policy to the secretary to be canceled.

We do not hesitate to say that had losses occurred after the conversation between appellee and the secretary of appellant, and before the fire, appellee would have been liable for assessments as provided in his policies.   It will not do to say that the secretary of the company could by an agreement with a policy holder release such policy holder from any of his liabilities to the company.   Such a policy of insurance must be construed along with the charter and by-laws of the company.   The policy holder not only receives his policy but he at the same time becomes a member of the company, and as such he assumes certain liabilities to the company.   He becomes liable to contribute to the loss of each member, including his own loss.   He is in a sense both the assured and the insurer.   He has no right to terminate such membership, except in the manner prescribed by the company itself, nor can the company terminate his membership only as the company itself has prescribed.   From the nature of such companies, paying as they do all losses by assessment on members and not from an accumulated fund, it is of first importance to the company to know at all times who its members are.   Its charter provides that the company shall consist of not less than a named number of members.   When an assessment is made by the company and paid by a member such payment carries the policy only until another assessment is legally made as the by-laws provide. The company itself has provided in its by-laws how a policy holder may terminate his relations to it, and these provisions of the by-laws cannot be abrogated

and set aside by a parol agreement between a policy holder and the secretary of the company. It is not material what appellee and the secretary may have said about the termination of appellee's rights and liabilities under the policy, for the reason that neither of them had any right or authority to change or modify the relations between the appellee and the company in any manner, except as provided by the by-laws. As long as appellee paid all assessments made against him and retained his policies, and until his withdrawal from the company had been effected in the manner provided in the charter and by-laws, the mutual rights and liabilities of appellee and the company remained in force.

Counsel for appellant, in support of their position that the policy was canceled by this parol agreement, cite the case of *Farmers' Mutual Insurance Co.* v. *Wenger*, 90 Pa. St. 220, and set out in their brief the opinion in that case in full. But that case fails to support appellant's position. The by-laws of the company provided that in case of the withdrawal or expulsion of a member, an entry of such withdrawal or expulsion should be made on the books, and the liabilities should commence and terminate at 12 o'clock on the day on which their names were entered, withdrawn or erased. The policy holder had surrendered the policy, but the company had failed to enter the withdrawal on its books. The court held the company not liable for the loss of the property insured, and in the opinion said: "Wenger had nothing to do with the books; if he complied with his part of the contract by a surrender of his policy, which, of course, meant a release of the company, he had nothing more to do, and he was as effectually released from all future obligations to the company as though his name had never been on its books."

Error is assigned upon the ruling of the court in striking out certain allegations in an answer in which it was alleged that the board of directors had instructed the secretary to cancel appellee's policy, in case he ever requested it, upon payment of all dues from him to the company.    This was not error, for the reason that the board of directors had no authority to direct the secretary to cancel a policy in any manner other than that provided by the by-laws.    Nor was it error to strike from the pleading an allegation that after the conversation between appellee and the secretary that appellee regarded the policy canceled, and that he had publicly announced that he had withdrawn from the company.

There are certain allegations in the second paragraph of reply that are not material and should have been omitted from the pleading.    Appellant's counsel say "the words are perhaps harmless", and we think it quite clear that they are harmless, and in that view of it there would be no reversible error to refuse to strike them out.

It is assigned as error that the court erred in its conclusions of law.    It is argued that there is no direct finding that the policies sued on were in force at the time of the fire.    The court does not say in so many words that the policies were in force at the time of the fire, but it is found that the policies were issued to the appellee and that they had not expired, and that he had paid all dues and assessments against him; that he had not assigned the policies, nor surrendered them to the secretary to be canceled, and the court further found the existence of the corporation under the statute, its manner of doing business and the charter and by-laws of the company, that in any way affect the issues in the case.    We think it clearly appears from the finding that the policies were in full force at the time of the fire.

It is argued that the court erred in overruling the motion for a new trial. The court found in its tenth finding, that article twelve of the old by-laws was still in force, and in its ninth finding that article twelve of the new by-laws was in force. There was some evidence that the by-laws were amended, and the amended by-laws were read in evidence. There is nothing in the new by-laws which shows that they were intended to supersede and take the place of the old by-laws, and article twelve of the new by-laws is not necessarily inconsistent with the same article in the old by-laws. The two articles are in no wise inconsistent, and both could stand and be enforced. But even if the court was wrong in its tenth finding, there was no error, for the reason that the ninth finding, about which no question is made, sets out article twelve of the new by-laws and finds it was in force, so that the conclusions of law as to this particular question about withdrawing from the company are sufficiently sustained without the tenth finding, and that finding could in no way affect the conclusion, and even if it should be held that the court was wrong, as appellant contends, in admitting in evidence the old by-laws, there would be no reversible error for the reason that the court found, so far as pertinent to the issue, the rights and duties of appellant and appellee under the policy, as set out in the new or amended by-laws.

Carpets and bed clothing are covered by the term "household furniture" in a policy of insurance. The term "furniture" has been held to include plate, china and linen, bronzes, statuary and pictures. See 8 Am. and Eng. Ency. Law, 985 note; 9 Am. and Eng. Ency. Law, 783 note.

One of the reasons assigned for a new trial was error of the court in sustaining an objection to a question propounded by appellant to appellee as to

whether he had not made certain statements out of court about the cancelation of his policies.   The question was not material either as a part of the *res gestae*, or as an impeaching question.   It is well settled that a witness cannot be impeached on an immaterial matter.   The rights and liabilities of appellee under his policies of insurance could not be affected one way or the other by how he regarded the contract of insurance.   As we have already observed, these matters were to be determined by the policies and the charter and by-laws of the company.

It is not error to sustain an objection to a question asked a witness if the witness is afterwards permitted without objection to answer the same question put in a different form.   Judgment affirmed.