MICHAEL A. McMILLEN, executor,[1] *vs.* CAROLE
GOLDSBOROUGH McMILLEN & another.[2]

No. 00-P-1442.

Essex. September 19, 2002. - March 13, 2003.

Present: JACOBS, DOERFER, & COHEN, JJ.

*Devise and Legacy,* Personal property. *Will,* Construction. *Probate Court,* Attorney's fees.

Where the meaning of a bequest in a will of "paintings, furniture and furnishings" in the marital home was not ambiguous, a Probate Court judge did not err in construing "paintings" to include religious icons, even though they were painted on wood rather than canvas or paper, and "furniture and furnishings" to include all items of personal property that were utilitarian to the household or that served as decoration in the marital home. [572-576]
In a civil action brought by the executor of a will seeking instructions, pursuant to G. L. c. 215, § 6, the judge did not abuse his discretion in denying the request of a defendant-counterclaimant for attorney's fees, where the amount requested was unduly large in relation to the value of the property in contention [576-577]; however, while the award of attorney's fees to another defendant was appropriate, the judge erred in requiring that those fees be paid by the executor personally, rather than by the estate, where the issue regarding which the executor sought instructions was not free from doubt [577-578].

CIVIL ACTION filed in the Essex Division of the Probate and Family Court Department on February 16, 1999.

The case was heard by *Edward J. Rockett,* J.

*Kevin M. Dalton* for the plaintiff.

*Raymond A. O'Brien* for Julie C. McMillen.

*John S. Legasey* for Carole Goldsborough McMillen.

---

[1] Of the estate of Louis A. McMillen.

[2] Julie C. McMillen, as guardian of Melissa McMillen. Also named and served were several other defendants potentially interested in the estate, who did not appear in these proceedings. In her capacity as guardian, Julie C. McMillen filed a counterclaim against Michael A. McMillen and a cross-claim against Carole Goldsborough McMillen.

COHEN, J. When Louis A. McMillen (Louis) died on May 4, 1998, he left a surviving spouse, Carole Goldsborough Mc-Millen (Carole); children and stepchildren from two prior marriages, including a son, Michael A. McMillen (Michael); and a granddaughter, Melissa McMillen (Melissa), the daughter of Louis's deceased son and Julie C. McMillen (Julie). A dispute over the testamentary disposition of Louis's tangible personal property gives rise to this appeal.

1. *Background.* Article First of Louis's last will and testament provided, in relevant part:

> "If CAROLE GOLDSBOROUGH is my surviving spouse, I give and bequeath to her such paintings, furniture and furnishings as she may select from among whatever paintings, furniture and furnishings I may own at the time of my death. I give and bequeath all paintings, furniture and furnishings not selected by her in equal shares to such of my children, my stepchildren, and my granddaughter, MELISSA McMILLEN, as survive me, it being my wish that they shall all have at least one painting by which to remember me."

This article also contained a few specific bequests of personal property, as well as a residuary clause:

> "I give and bequeath all my remaining tangible personal property to my issue surviving me, by right of representation, to be divided among them as they may agree or, failing agreement, as my executors in their absolute discretion determine."

The will was allowed on June 22, 1998, and Michael was appointed as executor of the estate. A difference of opinion then developed between Carole and some of the residuary legatees as to the scope of the phrase "paintings, furniture and furnishings." At issue was whether and to what extent this bequest included Louis's extensive accumulation of artwork and decorative objects, most of which were on display in the marital home. A particular bone of contention was whether Carole was authorized to select from Louis's collection of approximately sixty Greek, Russian, Serbian, and Syrian "icons," which are religious images, painted on wood.

In February, 1999, upon the advice of counsel, Michael filed a complaint for instructions, pursuant to G. L. c. 215, § 6, seeking the guidance of the Probate Court with respect to this dispute. Julie (as Melissa's guardian) and Carole appeared as defendants and filed various claims of their own. Germane to this appeal is Julie's claim, contested by Carole, that the icon collection and certain other items of tangible personal property did not fall within the categories "paintings, furniture and furnishings."

After a one-day trial, a judge of the Probate and Family Court issued written findings of fact and conclusions of law. After considering a fair amount of evidence extrinsic to the will, the judge ultimately concluded that the language in question was clear and unambiguous, and that the testator's intent to bequeath to Carole virtually all the contents of the marital home could be gleaned from the four corners of the instrument, as illuminated by cases from other jurisdictions and stipulated dictionary definitions taken from the American Heritage Dictionary. Relying upon the dictionary definition of "painting" — "[a] picture or design in paint," American Heritage Dictionary 893 (2d College ed. 1992) — as well as customs duty cases construing the word "painting" to include artwork in which paint was applied to surfaces other than canvas or paper,[3] the trial judge concluded that the bequest of "paintings" included Louis's icons, even though these works were painted on wood. The judge further concluded that the words "furniture" and "furnishings," again viewed with the aid of the dictionary[4] and some relevant out-of-State cases,[5] collectively encompassed

---

[3]The judge relied upon *In re Davis Collamore*, 53 F. 1006 (C.C.S.D.N.Y. 1893) (painted slab of porcelain), and *White* v. *United States*, 113 F. 855 (C.C. S.D.N.Y. 1902) (painted wooden ceilings).

[4]The dictionary defined "furniture" as "[t]he movable articles in a room or establishment that make it fit for use," American Heritage Dictionary, *supra* at 540, and "furnishings" as, inter alia, "piece[s] of equipment necessary or useful for comfort or convenience" or "[t]he furniture, appliances, and other movable articles in a home or office." *Ibid.*

[5]The judge relied upon *Lawwill* v. *Lawwill*, 21 Ariz. App. 75 (1973); *Patrons' Mut. Aid Soc.* v. *Hall*, 19 Ind. App. 118 (1898); *In re Frohmann's Will*, 205 Misc. 913 (N.Y. Surr. Ct. 1954); and *In re Patterson's Estate*, 69 S.D. 374 (1943).

all personal chattels that contributed to the use or convenience of the household or to the ornament of the house.[6]

In keeping with these conclusions, the court entered a judgment that provided, in substance, that Carole was allowed to select from all items of personal property that were utilitarian to the household or that served as decoration in the marital home. Works of art (including icons) that were on display at the time of Louis's death were within the bequest to Carole as "furnishings" whether or not they also were "paintings." However, because "paintings" were designated as a separate category of property, the judge construed the will as authorizing Carole to select from among any of the paintings owned by Louis at the time of his death even if they were not being used for ornamental purposes in the marital home.

Not all of Louis's tangible personal property was deemed to be included within the ambit of "paintings, furniture and furnishings." The judge excluded from Carole's right of selection Louis's clothing and jewelry, except insofar as some jewelry-like items — decorative metal pins — were displayed as artwork in the home.[7] These categories of property were directed to pass to the residuary legatees under the will. Also excluded from Carole's right of selection were the specific bequests of personal property that were itemized in the will.

The judge also addressed the issue of the parties' attorneys' fees. Having found that the complaint for instructions was "groundless" because the meaning of the will was plain and unambiguous, the judge ordered Michael to pay personally, and not from the estate, all of the attorneys' fees and costs incurred by Carole (which amounted to $18,447.00). The judge also denied, in toto, a motion of Julie's counsel for fees and costs, explaining that the amount sought ($116,907.18) was "outrageous."

---

[6]The will directed that the house be sold and the net proceeds distributed to a marital trust. Until then, Carole was permitted to occupy the house rent free, with all associated expenses to be paid by the estate.

[7]Although the stipulated dictionary entry for "furnishings" listed a secondary definition of "wearing apparel and accessories," the judge nevertheless interpreted the bequest as excluding these items. The correctness of the judge's rejection of this quaint usage of the term "furnishings" is not before us. Carole has not cross-appealed and does not challenge the judge's ruling.

Julie appeals the merits of the judge's decision as well as the denial of her counsel's motion for fees. Michael appeals from the judgment insofar as it ordered him to pay Carole's fees and costs personally.

2. *Discussion.* "The fundamental object in the construction of a will is to ascertain the testator's intention from the whole instrument, attributing due weight to all its language, considered in light of the circumstances known to the testator at the time of its execution, and to give effect to that intent unless some positive rule of law forbids." *Flannery* v. *McNamara,* 432 Mass. 665, 667-668 (2000), quoting from *Putnam* v. *Putnam,* 366 Mass. 261, 266 (1974). See G. L. c. 191, § 1A(2), as amended through St. 1977, c. 637, § 1 ("[t]he intention of a testator as expressed in his will shall control the legal effect of his dispositions"). In pursuing this object, the Probate Court may consider extrinsic evidence of surrounding facts and circumstances, not to challenge or alter the terms of the will, but to place the court in a position as near as possible to that of the testator at the time the will was written. See *Gray* v. *McCausland,* 314 Mass. 743, 747 (1943). However, once the court occupies this position, the focus of the court should be on the language of the will. See *Goodwin* v. *New England Trust Co.,* 321 Mass. 502, 504 (1947). See generally Smith, The Admissibility of Extrinsic Evidence in Will Interpretation Cases, 64 Mass. L. Rev. 123, 124-125 (1979). "While intent is the lodestar of testamentary construction, it cannot be used to displace what a will has said." *Schena* v. *Pagliuca,* 9 Mass. App. Ct. 449, 452 (1980).

Massachusetts continues to subscribe to the so-called "plain meaning" rule. Unless the language of the will is ambiguous, it is to be construed without resort to extrinsic evidence of the testator's intent, even if the language in question has a legal consequence not likely to have been understood by the testator or contrary to his intention expressed orally. *Flannery* v. *McNamara, supra* at 668.

Although the Supreme Judicial Court recently was asked to liberalize the "plain meaning rule," the court found it unnecessary to decide the issue on the facts presented. In *Flannery* v. *McNamara, supra* at 671-672, the appellants urged the court to

adopt the principle contained in Restatement (Third) of Property (Donative Transfers) § 11.2(b)(3) (Tent. Draft No. 1 1995), which permits consideration of the donor's "personal usage" — that is, the testator's habitual use of a term in an idiosyncratic manner — to construe the same term in the testator's will. The court concluded that even if the personal usage doctrine were available to the appellants, the facts did not support its application. *Id.* at 672-673. Accordingly, it has been left that unless a will contains obvious conflicts in language (patent ambiguities) or uncertainties in language that emerge from particular types of surrounding facts and circumstances (latent ambiguities), the court should not consider extrinsic evidence of the testator's intent.

Traditionally, Massachusetts has recognized only two categories of latent ambiguities. "The first type occurs when a will clearly describes a person or thing, and two or more persons or things exactly fit that description. The second type of latent ambiguity exists when no person or thing exactly fits the description, but two or more persons or things partially fit." *Flannery* v. *McNamara, supra* at 668-669, quoting from *Phipps* v. *Barbera*, 23 Mass. App. Ct. 1, 3 n.3 (1986). In the present case, a threshold question was whether the words of the bequest were latently ambiguous given that the testator had an unusual collection of different types of artwork, elements of which could be described with greater particularity than by the generic phrase "paintings, furniture and furnishings." After looking at the issue in light of the surrounding facts and circumstances, the judge reached the conclusion that there was no ambiguity. Consequently, he went on to construe the bequest, as he was required to do, by focusing upon the "ordinary meaning" of the terms used. See *Longy Sch. of Music, Inc.* v. *Pickman*, 344 Mass. 511, 513 (1962).

Julie does not challenge the judge's conclusion that the phrase "paintings, furniture and furnishings" is unambiguous, although, as we discuss momentarily, she offers an alternative argument based upon the assumption that it is. Her complaint is that the judge erroneously relied upon the dictionary and out-of-State cases to ascertain the ordinary meanings of the words used, and she maintains, without cited authority, that the term "painting"

ordinarily means a two-dimensional, framed composition, consisting of oil, tempera, or acrylic paint applied to canvas or paper, and that "paintings" therefore do not include Louis's prints, lithographs, or icons. Julie also argues that the terms "furniture" and "furnishings" ordinarily refer only to utilitarian items, and do not embrace items, such as the icons, sculptures, and decorative metal pins, that served an entirely aesthetic purpose in Louis's home.

Julie can hardly question the judge's resort to the dictionary, however, since she and the other parties stipulated to the admission in evidence of the definitions that he used. Julie stipulated to these definitions without limitation, never indicating that she was agreeing only to their authenticity and not to their use as an aid to the construction of the will. Compare *Roach* v. *Newton Redev. Authy.*, 8 Mass. App. Ct. 618, 623 n.9 (1979), *S.C.*, 381 Mass. 135 (1980) (party stipulated to prior findings in order to make trial more efficient, but without abandoning objections). Accordingly, Julie may not now complain that the judge's reliance upon the stipulated definitions was error. See *Schwartz* v. *Rose*, 418 Mass. 41, 46 (1994).[8]

There also was no error in the judge's reference to cases decided elsewhere. In construing the meaning of a term, analogous cases from other jurisdictions can be instructive when there is no controlling local authority. See, e.g., *Commissioner*

---

[8]We do not suggest that, absent the stipulation, it would have been improper for the judge to consult a dictionary when the task at hand crystallized into determining the "ordinary meaning" of the terms used. See generally *Boylston* v. *Commissioner of Rev.*, 434 Mass. 398, 405 (2001) (approving use of dictionary to assist in statutory construction). Dictionary definitions can be a useful resource when the court is attempting to ascertain the ordinary meaning of a term used in a will, at least in circumstances where the word in question has not acquired a different meaning under statutory or common law. Compare *Cape Cod Bank & Trust Co.* v. *Cape Cod Hosp.*, 3 Mass. App. Ct. 279, 280-281 (1975) (ordinary meaning of word "beneficiaries" determined with reference to dictionary definition that was consistent with caselaw), with *Powers* v. *Wilkinson*, 399 Mass. 650, 653-654 (1987) (contemporaneous dictionary definition of term "issue" not controlling where it conflicted with long-standing legal precedent). We also do not suggest that a stipulation or other formal proof is essential to establish the definitions contained in a standard dictionary. As numerous reported decisions illustrate, the lexical meaning of a word is a proper subject for judicial notice when a court is discerning the ordinary meaning of a word. See, e.g., *Powers* v. *Wilkinson, supra* at 653; *Lodge Corp.* v. *Assurance Co. of Am.*, 56 Mass. App. Ct. 195, 197-198 (2002).

*of Rev.* v. *Jafra Cosmetics, Inc.*, 433 Mass. 255, 259-261 (2001). In any event, the closest Massachusetts case is entirely consistent with the judge's decision. See *Richardson* v. *Hall*, 124 Mass. 228, 237-238 (1878), *S.C.*, 127 Mass. 64 (1879) (bequest of "all the household furniture" included bronzes, statuary and pictures used in various parts of the testator's home, because such items "render[ed] it more comfortable and agreeable as a place of residence").[9]

Julie's alternative argument with respect to the construction of the will is predicated upon the existence of ambiguity. She walks a fine line — refraining from advocating that the instrument is, in fact, ambiguous, but arguing that *if* we were to conclude that it is ambiguous, the extrinsic evidence introduced at trial "compels" the conclusion that Louis's intent was to exclude his collection of icons from the bequest to Carole.

Julie notes that Louis was an artist by avocation and that his estate included a considerable number of his own paintings. In this context, Julie argues, Louis's wish that members of his family have at least one "painting" by which to remember him most likely was intended to refer to paintings created by his own hand. Extrapolating from this assumption, Julie reasons that the term "paintings," as used throughout Article First of the will, should be interpreted as referring only to paintings made by Louis, himself, and not to his collection of icons, prints, and lithographs. Julie also points to testimony that Louis viewed the icons as religious objects and not as works of art; that the icons were displayed separately from other artwork and were physically and thematically distinctive; and that a prenuptial agreement between Louis and Carole listed Louis's "artwork" and "furniture" as separate categories, suggesting that Louis would not have used the terms "furniture" or "furnishings" to refer to his icons or, for that matter, to any of the artwork on display in his home. Julie also makes what amounts to a "personal usage" argument — that, in conversation, Louis never used the word "paintings" to refer to "icons," preferring to use their more specific designation and correcting those who did not.

---

[9]Inexplicably, this case was not brought to the trial judge's attention or cited by the parties on appeal.

Even if we were to assume that some or all of these facts are an appropriate basis for importing an ambiguity into the will, see *Flannery* v. *McNamara*, 432 Mass. at 669, the evidence relied upon by Julie would not be dispositive in light of other evidence supporting the judge's conclusion that Louis intended to make a broad bequest of his personal possessions to Carole. Under the terms of the will, Carole was to continue to reside in the marital home until it was sold. She, herself, was an artist who shared Louis's interest in his collection. There was evidence that when the will was in the process of being drafted and redrafted, it was called to Louis's attention by both his attorney and his son that the effect of his bequest, as phrased, would be to permit Carole to choose any or all of the paintings that he owned, including his icons. That Louis subsequently chose not to alter the wording of the will supports the conclusion that, whatever his personal habits of speech, he had no quarrel with the use of the generic word "paintings," even if that term would be considered to describe all of his paintings, including his icons, and not simply those works that he, himself, had created. The judge therefore had a sound basis for concluding that it was appropriate to construe the words "paintings, furniture and furnishings" in their ordinary and broadest sense.[10]

We turn next to Julie's argument that the trial judge should not have denied her attorneys' motion for fees. She acknowledges that the decision to award fees and costs out of an estate is a discretionary one,[11] but claims that the trial judge abused his discretion by denying the request without making more detailed findings. We disagree that the findings were inadequate.

---

[10] We have considered a further argument made by Julie, that the judge should have admitted two additional pieces of extrinsic evidence that she offered at trial: an unredacted copy of an appraisal of Louis's personal property and a proposed, unexecuted addendum to Louis's prenuptial agreement with Carole. We discern no error in the judge's rulings.

[11] "Modern statutes have created . . . a hodgepodge of legislation" regarding the award of costs and expenses, including counsel fees, in probate matters. 1 Belknap, Newhall's Settlement of Estates § 2:17, at 105 (5th ed. 1994). However, all involve the exercise of the court's discretion. In this case, Julie's attorneys relied upon G. L. c. 215, § 45, the general statute permitting the award of counsel fees in contested probate court cases. General Laws c. 215, §§ 39, 39A, and 39B, also supply authority for the award of counsel fees under various circumstances. Section 39B refers specifically to fee awards to parties in cases brought on a complaint for instructions.

It is implicit in the judge's characterization of the amount sought as "outrageous" that he perceived the fees to be unduly large (more than $100,000) in relation to the value of the property in contention as established by the uncontroverted evidence (less than $300,000). Thus, the judge was entitled, in his discretion, to reject Julie's fee request as placing an inordinate burden on the estate, and to consider, as well, that Julie was not the prevailing party. See *Clymer* v. *Mayo*, 393 Mass. 754, 772-773 (1985) (discussing factors relevant to awards of fees and costs under G. L. c. 215, § 39B).

Julie also maintains that the judge abused his discretion by not allowing at least some portion of the fees. It has not been made to appear, however, that the judge abused his discretion by disallowing the request in its entirety under the circumstances presented here.

Finally, we address the judge's award of the (far more modest) fees and costs incurred by Carole. While it was within the judge's discretion to grant Carole's request for reimbursement, we do not endorse the order insofar as it charges Michael, personally, rather than the estate.

A complaint for instructions is warranted when a fiduciary harbors reasonable doubt as to the interpretation of an instrument or his duties under it. *Hill* v. *Moors*, 224 Mass. 163, 165 (1916). Here, although the judge eventually came to view the will as unambiguous, we disagree with his conclusion that the filing of the complaint for instructions was "groundless." Cf. *Strand* v. *Hubbard*, 27 Mass. App. Ct. 684, 685-686 (1989), *S.C.*, 31 Mass. App. Ct. 914 (1991) (reversing award of damages under G. L. c. 231, § 6F, where judge erroneously determined that litigant's position was "wholly insubstantial" or "frivolous").

As the fiduciary charged with the responsibility of distributing the assets of Louis's estate, Michael was confronted with a difference of opinion among the legatees as to how the instrument should be interpreted and ran the risk of a suit for breach of duty if he elected one interpretation over the other. He did not involve the court precipitously. Before seeking judicial assistance, he first obtained the advice of counsel, who recommended that the matter be resolved by filing a complaint for

instructions. Given the absence of controlling Massachusetts authority interpreting the language of the disputed bequest and the unusual items of tangible personal property contained in Louis's estate, the matter was not free from doubt. Even the trial judge did not immediately perceive the will to be clear on its face, as reflected by his consideration of a significant amount of conflicting, extrinsic evidence before ultimately resting his decision on the language of the will alone. Under these circumstances, we think it was reasonable for Michael to bring the complaint for instructions and that he should not be penalized for doing so. That Michael was, himself, a residuary legatee and that some of the testimony elicited from him on cross-examination was unfavorable to Carole's position does not support the conclusion that he necessarily lacked neutrality or was ill-motivated.[12]

3. *Disposition.* The judgment is modified to provide that the trial court's award of attorneys' fees and costs to Carole Goldsborough McMillen shall be paid out of the estate. In all other respects, the judgment is affirmed.

*So ordered.*

---

[12]In view of our decision, we do not pass upon Michael's alternative argument that he was entitled to an evidentiary hearing before attorneys' fees were personally assessed against him.